Good morning, Judges. If it pleases the Court, I'm Mary Lou Hilberg, and I'm here to argue on behalf of Jimmy Lee Bills. What a difference a week makes. I don't know if your calendar, Clerk, is clairvoyant or if the Court has an inside track to the timing of the decisions of the United States Supreme Court. We have great control over the U.S. Supreme Court. We're just on a regular pipeline. They got my memo. I've been wondering how it all worked, frankly. We do, too. Yes. Well, I think that Holland changes the face of this case in three particular ways. The first is that there is a presumption in favor of equitable tolling according to that longtime left-leading, God-fearing liberal Chief Justice Roberts. And ---- I'm not sure that's the best way to make your argument. Well, I'm sorry. But I was, frankly, stunned by this decision, and it wasn't what I ---- Let's get to how it applies to this case. How it applies to this case is that I don't think there's any question that it's an extraordinary circumstance when Mr. Bills, by all ---- let's forget about how psychotic he is at any particular time. Let's focus on what we all can agree on, and that is he reads at the second-grade level, Justices. Second grade. That is a little bit above C. Dick, C. Jane, C. Spot Run. That's first grade. It's second-grade reading level. That was what he was ---- He did, did he not file some pleadings with various courts during his time of incarceration? So doesn't that suggest that he had some ability to understand procedural rules and comply with them? He had help in all of those. That was what his testimony was. He either copied it down verbatim or he had a jailhouse lawyer. Is that enough? What? Is that not enough? Having access to a jailhouse lawyer, no, because he didn't have ---- he had access to a jailhouse lawyer on and off during different times. You have to understand that ---- So he could ---- is your position that he has to be represented by counsel because of the scope of his mental condition? No. Well, I'm not saying he has to be represented by counsel, but in certain prisons I know if they have ADA clerks so that if you have someone who's completely illiterate, somebody can dictate to them and they write it down. I have another client in another prison in California where that happens, and I think that's enough. Mr. ---- Is it your position then that the assistance of another inmate would not satisfy Holland's requirement of some assistance? No.   I'm saying that he has to be represented by counsel. So when you have a case like Mr. Bill's where Mr. Bill's priors are sex offenses, he's doing 25 to life for possession of a shank, and he had a two-year offer. He chose to go to trial by himself after being given a written Sparetta waiver, which he signed without oral advisements. He has sex offense priors. So he's not in a special needs yard because he's not doing time on a sex offense, but anybody who got their hands on his case would see that he had two ADA priors, which puts his life in danger. The district court concluded that he was at least able to comply with the procedural deadlines. Were we reviewing that for clear error? Are you arguing that the district court was clearly erroneous in that determination? I am arguing that they were – if they said he could do it with the help of a jailhouse lawyer, I'm not disagreeing with that. I'm saying that Holland is not – is looking to what the individual can do by themselves or with what's readily accessible to them in prison. I'm saying that Mr. Bill's did not have a safe transcriber. He's competent verbally. He can talk, but he can't read and write. So if he had some kind of clerk or some kind of safe, and I do mean safe, somebody who isn't going to put the word out to the general prison population so he gets killed, if he had something. Was that information presented to the district court? That he had sex offense priors? Yes. That he was at risk? Yes. Yes. That's in the transcript. No, we're not a corrections board. We're not the warden. We can't determine what the appropriate level of protection he needs within the correctional system. We're here on whether he filed timely. I understand. In light of that, let me ask this. He was able to file a State habeas petition which had the effect of tolling the Federal statute, did it not? He was able to. Can I have a yes or no? Yes. Okay. And my understanding is that that State petition was denied in October of 2005? Yes. Correct? And that means he would have had until December, about Christmas of 2005 to file timely under AEDPA, correct? Yes. And his filing was actually 10 months later. Yes. Not 29 days like the case we just heard. Right. But 10 months. I was appointed. I don't remember how long it was after I was appointed that I filed the Federal habeas, but the statute was gone when I got the case. And he, the testimony at the evidentiary hearing was that he had access to this one jailhouse lawyer who did much of the work for him and who he could trust. Who helped him file the State habeas? Troy Rhodes. You know, you and I could get along a lot better if you wait for my question to end before you tell me what you think the answer is to my question. Okay? Yes, sir. I'm sorry. What help was provided to him for filing the State habeas petition? He had the assistance of a jailhouse lawyer by the name of Troy Rhodes Johnson. And Troy Rhodes Johnson was intermittently in and out of the same facility that Mr. Bills was. That's what one of the problems was for the difficulties in the timing, was that they weren't housed together. And this was part of the testimony at the evidentiary hearing. Was Mr. Bills or someone like him available during the period between October and December of 2005? Mr. Bills testified that there was not. And there was a testimony from the clerk in the prison law library that this was generally how things happened, that it's not accepted practice. The jailhouse lawyers are subject to discipline from the prison if it's known that they're doing this. But there is a cottage industry in prisons where jailhouse lawyers write petitions for people, but they expect to be paid. You've answered my question. Thank you. I'd like to reserve my remaining time. Why don't you do that and then you can respond. Good morning, Your Honors. My name is Robert Kesey. I'm representing the respondent, Clark, Ken Clark. Could you, to follow up with what counsel was just saying, explain to us how, at least in this prison, jailhouse lawyers serve as advocates such that access to a jailhouse lawyer can be held to satisfy and overcome the disabilities of someone who can only read and write at the second grade level? I'll do the best I can. The issue really is, was he prevented by his mental disabilities from filing? And we can see that, according to his testimony, he had help along every step of the way. He had help. But is there any evidence that he ever drafted something on his own initiative and without help? There is evidence of that. There's one portion of his federal habeas petition filed in 2000 in the Northern District in a separate case. In that case, there was testimony that it was both typed and handwritten. And in that case, he admitted that he authored the handwritten portions of that federal habeas petition. And I included it in my supplemental excerpts of records. And part of that handwritten portion, he talks about ineffective assistance of counsel. And he relates it to facts. He talks about facts about counsel didn't cross-examine the victim in that case or the police officer adequately. And then he writes, if the defendant could get an evidentiary hearing, the court would see that defendant's Sixth Amendment rights were violated to effective assistance of counsel. There was just too many things counsel could have did in defendant case that could have helped him. So if counsel would have did his job right, the jury would have saw the case in a whole different way. I think that really undermines his argument that he's illiterate or that even at a second-grade reading level, he understands legal concepts as evidenced by that statement. And he authored it. He doesn't dispute that. He actually admits that. So is your argument, then, that it really doesn't matter in this case that he had access to some assistance by another inmate, and that you're saying that he was reasonably competent to comply with the deadlines on his own? Yes. That is my argument. But that's not what the magistrate judge found. The magistrate judge found that he had a mental deficiency and relied on the fact, as I read it, that he had the problem, understood the need to challenge his conviction and could acquire assistance to do such. So that brings me back to jailhouse lawyers. Why are jailhouse lawyers an adequate source of assistance to somebody who needs assistance? Well, I think they're adequate because they can fill in for the deficiency of whatever deficiency the Petitioner may have. And what was the evidence in this case that they were available to this individual? Well, the evidence in this case is that he met this supposed jailhouse lawyer that he relied upon in the summer of 2004, and that this individual was willing to draft something for free. Now, Mr. Bills retracted that statement later and said nothing in prison is for free, but he said he described this individual as a friend of mine, said he was willing to do it for free, but that if we paid him, we might get a better result. So it appears to me that this individual was available to Mr. Bills. Furthermore, Mr. Bills testified that along every step of the way, whether it was filing inmate appeals, whether it was filing his prior Federal habeas petition, whether it was filing his State habeas petition, whether it was filing his petition for review in California Supreme Court, he had help. He acknowledges there's people around prison that will help you out. The core issue, the linchpin, if you will, of this case is whether his mental ability foreclosed his ability to timely file the State's position is that it did not. That's correct. That's essentially it. That's correct. The magistrate apply the proper legal standard for competency in this situation? Well, to be frank. The answer is no, isn't it? I think the answer is we don't know, because there's never been a standard. He applied the trial standard, and that's not correct, is it? I don't know if it's correct or not, because there's never been a case out there that has dictated what standard of competency we're going to have in terms of a pro se petitioner for equitable tolling. So I think he took a stab at it. I think he did the best he could. I don't know that Dusky really neatly applies here. Well, if we were to conclude that the magistrate judge applied the wrong legal standard on this very important question, why wouldn't we send it back to district court to apply the proper standard? Because this Court doesn't need to do that, because the real question is did his mental abilities prevent him from filing. So however you want to define competence in terms of equitable tolling, the question doesn't stop there as to whether he was competent or not competent. The question is did his mental illness, deficiencies, defects, whatever you want to call them, did they prevent him from filing? You know, it's pretty routine around here. I've only been here 15 years. But it's pretty routine around here that when we get a core legal issue and the trial is over, we go back, apply the correct standard, filter it through the facts, and send the case back up here if necessary. Why shouldn't we do that here? Well, I think ultimately the Court did apply the standard of Pace v. DiGuglielmo, and that's really the standard we're looking at. There's two factors of extraordinary circumstances prevented or stood in the way of the defendant from filing in a timely manner and diligence. And clearly there's not diligence here either, as I argued in my brief. But before we get to Pace, I mean, we have to decide or understand whether the prisoner, you know, had the ability to, you know, either confer with counsel or assistance or comply on his own. And if Dusky is not the correct standard here, if it's an issue of first impression, what's the State's position and argument as to the correct standard that the district court should apply in determining whether the inmate was precluded because of his mental condition from filing? Well, I'm not trying to dodge your question, Your Honor, but our position really is it's not necessary to decide what standard. Well, assuming it's necessary to decide what is the standard. I think it really comes down, and Dusky talks about this, it really comes down to do you understand what's going on in the proceedings and can you communicate? And I think that's what we have here. I think those are really the two core issues. Do you understand what's going on in the proceedings and can you communicate? Clearly, Mr. Bills can communicate. And clearly he understood the need to file a Federal habeas petition. There's no question about that. And I think under that standard, I think every competency standard really kind of carries those two elements, communication and ability to understand what's going on. So the standard that he articulated, that is the magistrate judge, says a competence standard which fails to take into account the reality of jailhouse lawyers is artificial and arbitrary. So the standard that should be applied for competency you're suggesting is both the mental ability and the accessibility to jailhouse lawyers. I wouldn't say that, Your Honor. That's what the magistrate judge seemed to be saying. I don't think the magistrate judge actually said that. I think he said is he unable to, based on a mental defect, to understand the need to file a Federal habeas and is he unable to take the steps to effectuate that filing? Whatever steps those may be. Because I need some clarity here. Any incompetence standard must be tailored to the ability to request or utilize available assistance, not just the ability to draft a petition. In other words, the critical inquiry is whether the prisoner can understand that the filing of a petition is necessary and can take some steps to make that happen. Yeah. Okay. And so and you're saying that doesn't incorporate in the context of this case the availability of jailhouse lawyers, which is what the magistrate judge seemed to think. I think in the context of this case, I agree with you. That's the proper standard. It does. It does. That's the proper standard in terms of the general standard of do you understand the proceedings and can you take steps to get there to the Federal habeas petition? And here, in particular, we know he could take steps because he filed various legal documents all around the place. What was the evidence with respect to the time frame in which he had the window of opportunity? Well, it's to the availability in that time frame. During the statute of limitations period? I'm not sure. The statute of limitations period roughly runs from January 2004 to December of 2005. He met this jailhouse lawyer, according to his testimony, in the summer of 2004. And he was able to file within that whole year period? Yeah. Yes. All right. Thank you. Thank you. Unless this Court has any further questions, I would submit it. No. Thank you very much. Thank you. Could you focus on the question I just asked? What was the evidence with respect to the availability or unavailability during the period of time when he had the opportunity to seek assistance and file on a timely basis? In this case? In this case. Mr. Rhodes had been transferred out of his housing unit into another one, which made it extremely difficult for them to be in communication. But not impossible? Pretty close to impossible. The other problem that we haven't discussed today is that Mr. Bills can't understand dates. He can't calculate how long is it from now until Christmas. That's something he cannot do. I'm assuming, since the magistrate judge seemed to assume as part of the test or standard mental deficiency and access. So I'm focusing on access. Okay. For whatever reason, whether he calculates dates or anything else. Now, maybe he doesn't have a concept of dates, so he doesn't act with diligence, but I don't understand that to be the State's argument. Nor is there a finding of lack of diligence on the part of the magistrate judge, I don't think. The evidence in this case is that Mr. Rhodes started the petition, was transferred to another unit. They were out of communication. I believe Mr. Bills may have been in the hole during that period of time. We submit and we admit that Mr. Bills is also an ASPD and has a lot of conduct disorders. So there was a considerable period of time where he was incommunicado, period. And I just want to, if the Court wanted to send it back for an evidentiary hearing, I'm not sure that it's in the record, but I know it's in my file as to when he was in the hole during those months and when he was not. And that would certainly be another issue we could bring up at another evidentiary hearing. I wanted to briefly really talk about the Court's alluding to what's a proper standard for competency in a habeas petition. And I argued Indiana v. Edwards in my briefing. There has to be a different standard in a habeas than in a trial courtroom. When you've got somebody like Mr. Bills who can talk, he may not make a whole lot of sense, but he can talk and speak to and be understood. He's got a much higher verbal ability than he does have in a written language. And I may not have made it clear to the magistrate court that someone like Mr. Bills can have a wide range of skills in the same brain. He's not mentally retarded across the board. But he does have a 64 verbal IQ. And that's because his reading and writing levels are so low. But your position is the Edwards standard would be the appropriate standard for gauging his mental condition. Yes, because you can only access habeas through a written document. There's no alternative way of getting into this courthouse or that courthouse. It has to be in writing. And that, I believe, is what raises the ADA issue, too, of accessibility that has no other way. You're over time, so we have your point. Okay. All right. Thank you very much. Thank you. Thank you, counsel, for the argument. The case argued is submitted.
judges: Tymkovich, Hawkins, Fisher